J-S78007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY WAYNE NUTTALL, | |
| Appellant | No. 1647 WDA 2015 |

Appeal from the PCRA Order Entered September 16, 2015
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0003461-2006

BEFORE:  BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED NOVEMBER 30, 2016**

Appellant, Anthony Wayne Nuttall, appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  Appellant asserts two ineffective assistance of counsel (IAC) claims, both pertaining to the allegedly deficient performance of his trial attorney.  After careful review, we affirm.

On January 17, 2008, Appellant was convicted by a jury of numerous offenses[1] related to the sexual molestation of his stepdaughter, M.M.  The

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The jury convicted Appellant of one count of Rape, 18 Pa.C.S. § 3121(a)(1); three counts of Involuntary Deviate Sexual Intercourse, 18 Pa.C.S. § 3123(a)(7); one count of Aggravated Indecent Assault, 18 Pa.C.S. § 3125(a)(8); one count of Indecent Assault, 18 Pa.C.S. § 3126(a)(1); two counts of Unlawful Communication or Contact with a Minor, 18 Pa.C.S. §
*(Footnote Continued Next Page)*

offenses occurred over the course of many years, beginning just before M.M. turned twelve years old, and continuing until she was seventeen, when she finally revealed the abuse to friends and family.[2] The sentencing court, after first determining that Appellant met the criteria to be deemed a sexually violent predator, sentenced Appellant to an aggregate term of 33 years' and 2 months' to 112 years' incarceration.

Appellant's initial direct appeal was quashed. However, Appellant successfully sought restoration of his direct appeal rights, as his appellate counsel had abandoned him by failing to file an appellate brief on his behalf. Thereafter, Appellant filed a *nunc pro tunc* notice of appeal on May 16, 2011. On June 22, 2012, this Court affirmed Appellant's judgment of sentence. ***Commonwealth v. A.W.N.***, 53 A.3d 938 (Pa. Super. 2012) (unpublished memorandum). Appellant did not seek further review of that decision.

> Thus, [Appellant's] judgment of sentence became final on or about July 22, 2012, at the expiration of time for seeking review. [Appellant] filed the instant[,] timely PCRA petition … on or about June 24, 2013. … A PCRA hearing was held before this Court on or about April 14, 2015 and briefs of the respective parties were ordered. … [Appellant]'s Memorandum of Law in support [of] the Post-Conviction Petition was filed on or about June 24, 2015. … The Commonwealth's Response … was filed on or about August 4, 2015.

*(Footnote Continued)* ───────────────

6318(a)(1); two counts of Corruption of Minors, 18 Pa.C.S. § 6301(a)(1); and one count of Criminal Solicitation, 18 Pa.C.S. § 902(a).

[2] A full recitation of the facts underlying Appellant's conviction can be found in the PCRA court's opinion. ***See*** PCRA Court Opinion (PCO), 9/16/15, at 3-7.

PCO at 2-3.

On September 16, 2015, the PCRA court entered an order denying Appellant's PCRA petition, *id.* at 25-26, and simultaneously issued an opinion setting forth the reasons for its decision. Appellant filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on November 16, 2015. On November 18, 2015, the PCRA court entered an order adopting its September 16, 2015 opinion in lieu of issuing a Rule 1925(a) opinion.

Appellant now presents the following issues for our review, restated herein for clarity:

1. Was trial counsel ineffective for failing to request a prior-bad-acts cautionary instruction, where the trial court, in admitting the prior-bad-acts evidence, represented that it would give such an instruction but failed to do so?

2. Was trial counsel ineffective for presenting no character witnesses on Appellant's behalf, where Appellant testified at the PCRA hearing that such witnesses would have been available at trial, and where trial counsel could not recall the reason why he failed to call them to testify?

*See* Appellant's Brief at 1.

After reviewing the certified record, the parties' briefs, and the relevant law, we conclude that the well-reasoned opinion of the Honorable Rita Donovan Hathaway thoroughly addresses each of Appellant's IAC claims, and correctly concludes they lack merit. Accordingly, we adopt the portions of the PCRA court's September 16, 2015 opinion addressing these matters as our own, and affirm the PCRA court's denial of Appellant's PCRA petition on the basis of that opinion. *See* TCO at 11-16 (addressing and

- 3 -

rejecting Appellant's prior-bad-acts cautionary instruction IAC claim); at 22-24 (addressing and rejecting Appellant's character witness IAC claim).

Order **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2016

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA          )
                                      )
            VS.                       )      No.   3461 C 2006
                                      )
ANTHONY WAYNE NUTTALL,                )
                                      )
            Defendant.                )

## OPINION AND ORDER OF COURT

AND NOW, this __/6 Th__ day of September, 2015, upon consideration of Defendant's

petition filed pursuant to the Post-Conviction Relief Act (42 Pa.C.S. §9541, et. Seq.) and after a

hearing held before this court and consideration of the briefs submitted by the parties, and upon a

review of the record in this case, it appears to this Court that there is no genuine issue of material

fact, no entitlement to relief and no purpose to be served in further proceedings for the following

reasons:

## I.    FACTUAL AND PROCEDURAL HISTORY OF THE CASE

### a.    PROCEDURAL HISTORY:

On January 17, 2008, following a three-day jury trial, the Defendant was convicted of

Rape, (18 Pa.C.S. §3121(a)(1)), three counts of Involuntary Deviate Sexual Intercourse (IDSI)

(18 Pa.C.S. §3123(a)(7)), Aggravated Indecent Assault (18 Pa.C.S. §3125(a)(8)), Indecent

Assault (18 Pa.C.S. §3126(a)(1)), two counts of Unlawful Communication or Contact with a

Minor (18 Pa.C.S. §6318(a)(1)), two counts of Corruption of Minors (18 Pa.C.S. §6301(a)(1))

and Criminal Solicitation (18 Pa.C.S. §902(a)). On August 5, 2008, the Defendant was

determined to be a sexually violent predator (SVP), and was sentenced to an aggregate sentence

1

of thirty three (33) years and two (2) months to one hundred twelve (112) years incarceration. Post Sentence Motions for modification of sentence and challenging the SVP determination were filed and denied by Order of Court, dated February 26, 2009. An appeal was thereafter filed on or about March 23, 2009 by present PCRA counsel, Sally Frick, Esq. However, that appeal was quashed for counsel's failure to file a brief. A PCRA Petition was filed, alleging appellate counsel's ineffectiveness for abandoning the Defendant on appeal; that PCRA was granted and the Defendant's appeal rights were reinstated. A notice of appeal was filed on or about May 16, 2011. On June 22, 2012, the Superior Court of Pennsylvania affirmed the judgment of sentence by Memorandum Opinion at 813 WDA 2011. The Defendant did not seek review of the Superior Court's decision. Thus, the judgment of sentence became final on or about July 22, 2012, at the expiration of time for seeking review.[1] The Defendant, Anthony Wayne Nuttall, ("Nuttall") filed the instant timely PCRA petition at 3461 C 2006 on or about June 24, 2013. The matter was scheduled to be heard on December 13, 2013, but was continued, on motion of the Defendant, until February 19, 2014. The matter was continued again, by Order of Court dated January 10, 2014, to the next available criminal motions court. The matter was continued on motion of the Commonwealth by Order of Court, dated March 5, 2014, to the next available criminal motions court. The matter was continued on motion of the Defendant by Order of Court, dated August 29, 2014, to the next available criminal motions court. The matter was continued on motion of the Commonwealth to the next available criminal motions court by Order of Court, dated November 19, 2014. A PCRA hearing was held before this Court on or about April 14, 2015 and briefs of the respective parties were ordered. The Defendant's request for an extension of time to file a brief in support of the PCRA petition was granted by Order of Court, dated May 19, 2015. Defendant's Memorandum of Law in support the Post-Conviction Petition was filed

---

[1] 42 Pa.C.S.A.§9545(b)(3).

on or about June 24, 2015. The Commonwealth's request for an extension of time to file a brief in response to the Defendant's Post Conviction Relief Petition was granted by Order of Court dated, July 28, 2015. The Commonwealth's Response to the Defendant's PCRA Petition was filed on or about August 4, 2015.

As previously set forth in this Court's Opinion and Order of Court, dated July 15, 2011, which was adopted by the Superior Court "as its own" at 813 WDA 2011 on or about June 22, 2012, the facts in the above captioned case are as follows:

## b.    FACTUAL HISTORY:

M.M. (born June 22, 1987), testified that her mother and the defendant, Anthony Nuttall, married in 1994, when she was six years old. (TT 80).[2]   She recalled that she lived with her mother and Nuttall in Smithton until she was in fourth grade, when she went to live with her father and stepmother in Ruffsdale. (TT 80-81). Although she lived with her father, she recalled that she would spend time in Smithton with her mother, her younger sister, and Nuttall. In fact, she felt free to come and go between her parents' two homes as she wished. (TT 81-82). She testified that her relationship with Nuttall changed right before she turned twelve years old, when she was in fifth grade and had entered puberty. (TT 82). She could not recall every incident of sexual contact that Nuttall had with her, nor the order in which the contacts occurred, "because I was so young - - and it happened so many different times, it's hard to keep track." (TT 88). There were some things, however, that she definitely could recall. (TT 88).

M.M testified that the first incident she could recall was when the family embarked on a trip to New Jersey. M.M. was sitting in the back seat of a minivan with Nuttall and her younger sister, who was sleeping. She remembered that she was eleven years old, that it was dark, and

---

[2] Numerals in parenthesis preceded by the letters "TT" refer to specific pages of the transcript of the trial in this matter, held on January 14-17, 2008 before this court, which has been made a part of the record herein.

33 G

3

that Nuttall reached over and began rubbing her breast. She pushed him away, but he persisted touching her breast. He then proceeded to rub her stomach, and was "starting to work his way down my pants." (TT 84, 129). He stopped when she pushed him away again. She said that his actions made her "really nervous and scared," and that she never told anyone about the incident at the time. (TT 85).

M.M. testified that after the family arrived in New Jersey at Nuttall's mother's home, she had to sleep in the living room on a couch, while the other family members had bedrooms to sleep in. She recalled that she awoke one night to witness Nuttall rubbing her thigh under the blanket. M.M. tried to push him away, but he tried to kiss her on her mouth. (TT 85-86, 130-31). She again pushed him away, and did not reveal the details of the incident immediately because she was scared, "embarrassed and humiliated." (TT 87).

M.M. testified that the next thing she remembered was an incident that occurred in the Smithton home after they had returned from New Jersey. M.M. testified that she had been watching television in the living room, and Nuttall came into the room, pulled his pants down and started playing with his penis in front of her. (TT 88). She stated that Nuttall was masturbating and he grabbed her head and tried to put his penis in her mouth. (TT 89). When M.M. would not open her mouth, Nuttall forced her mouth open, put his penis in her mouth and started moving it back and forth. (TT 89-90, 131). M.M. testified that no one else was at home when this incident occurred, and that at the time she was either eleven or twelve years old. (TT 90-91). Again, M.M. did not tell anyone about the incident because she was so embarrassed. (TT 91). M.M. related that the act or acts of oral sex occurred on more than one occasion (TT 109, 110, 133).

$54a$

4

M.M. next testified about another incident that occurred in the Smithton home when she was in her bedroom taking a nap. M.M. indicated that Nuttall come into her bedroom, got on the bed and began removing her pants. Although she fought him, Nuttall was able to remove her pants and inserted his finger into her vagina while he held her down. (TT 91-92, 132). He then performed oral sex on M.M., licking her clitoris with his tongue. (TT 92, 132). When he removed his finger from her vagina, he placed it into his mouth. (TT 93). She recalled that she was twelve or thirteen years old at the time of this incident. Again, M.M. did not report the incident to anyone.

M.M. testified that she also recalled an incident that occurred in the bathroom when she was approximately thirteen or fourteen years old. (TT 95, 134). She was preparing to take a bath when Nuttall entered the room. M.M. testified that she covered herself with a towel, but Nuttall ripped it away. Nuttall bent M.M. over the sink and inserted his penis into her vagina. M.M. testified that she was fighting against him, but that he held her in place for a few minutes, then withdrew and ejaculated on her back. (TT 93-94). M.M. told the jury that after this incident, she "got into the tub and scrubbed my skin as hard as I could." (TT 95). When asked, M.M. testified that Nuttall penetrated her vagina with his penis on other occasions as well, usually in her bedroom, but that Nuttall always withdrew and ejaculated on her or on an object, like a towel. (TT 95-96, 109, 135, 137).

M.M. testified to another incident that occurred in the bathroom, where Nuttall again assaulted her and bent her over the sink, but that this time, Nuttall penetrated M.M.'s anus with his penis. (TT 97-98). She was fourteen or fifteen at the time of this incident, and this type of behavior only happened once. (TT 103, 110). M.M. testified that she screamed, but Nuttall covered her mouth with a towel. (TT. 98). Nuttall's assault was interrupted by a phone call.

354

5

M.M. testified that she was humiliated, and in excruciating pain, and that she sat on the bathroom floor crying until Nuttall returned and told her to get up and get dressed because her mother was coming home. M.M. told Nuttall that she was going to tell someone about the assaults, but he told her that no one would ever believe her. (TT 99-100).

M.M. related that on one occasion, Nuttall gave her a brown paper bag and told her that he had bought a dildo that was the same size as his penis. He told her to use the dildo and think about him. M.M. testified that she tried to burn the flesh-colored object, and threw away the parts that would not burn. (TT 103-04). He also gave M.M. a picture of his penis, telling her that he had hidden the photo under her mattress and she should look at the photo and think about him. (TT 104-05). Nuttall also made a habit of watching pornographic movies on television, that he would have M.M. watch them with him, that he would masturbate himself and force M.M to touch herself as well. (TT 106-09).

M.M. testified that when she was seventeen years old, Nuttall had occasion to drive her best friend, A.M., home from the Smithton house after she had been visiting with M.M. During the ride to A.M.'s house, Nuttall pulled the car off the road onto a back road, instructed M.M. to get in the back seat of the car, and told M.M. to lick A.M.'s nipple. (TT 115-16). The girls initially did nothing, but after he repeated his instructions several times, and after he threatened to leave the girls in that spot, M.M. did as she was told. Nuttall then remarked that they "were going to make him cream himself." (TT 117).

M.M. testified that she had felt hopeless, embarrassed and had believed Nuttall when he told her that no one would believe her if she told anyone about what was happening. (TT 100). He told her this on numerous occasions, and also told her that if she ever told anyone it would hurt her mother "really bad." He told M.M. that her mother had tried to kill herself before when

she caught him cheating on her, and that she would try again if she ever found out. (TT 101-03). Despite her feelings and fears, M.M. testified that she actually moved back in with her mother and Nuttall when she was entering eleventh grade because she thought that she could protect her younger sister from Nuttall's actions. (TT 112).

Nuttall's assaults stopped when M.M. was approximately seventeen years old. (TT 114). She finally disclosed the assaults to her boyfriend and another friend. (TT 117). M.M.'s boyfriend eventually told her grandparents, and during a family meeting in February or March of 2006, she finally began admitting what Nuttall had done to her. (TT 118-19).

On January 17, 2008, following a three-day jury trial, the Defendant was convicted of Rape, (18 Pa.C.S. §3121(a)(1)), three counts of Involuntary Deviate Sexual Intercourse (IDSI) (18 Pa.C.S. §3123(a)(7)), Aggravated Indecent Assault (18 Pa.C.S. §3125(a)(8)), Indecent Assault (18 Pa.C.S. §3126(a)(1)), two counts of Unlawful Communication or Contact with a Minor (18 Pa.C.S. §6318(a)(1)), two counts of Corruption of Minors (18 Pa.C.S. §6301(a)(1)) and Criminal Solicitation (18 Pa.C.S. §902(a)). A presentence investigation and Megan's Law assessment were ordered to aid the court at sentencing.

Following the preparation of the ordered investigation and assessment, the Defendant was scheduled for sentencing on August 5, 2008. At that time, a sexually violent predator hearing was held pursuant to 42 Pa.C.S. §9795.4. Testimony was taken from Sexual Offenders Assessment Board member Herbert Hays, who was qualified as an expert in determining whether individuals meet the criteria of "sexually violent predator." (ST 7-8).[3] Mr. Hays indicated that he reviewed numerous records and facts in this case (ST 9-10) but was unable to interview the Defendant directly, as he refused to cooperate in the assessment process. (ST 8, 34-35). After

---

[3] Numerals in parenthesis preceded by the letters "ST" refer to specific pages of the transcript of the Sentencing Hearing in this case, held August 5, 2008, and made a part of the record in this case.

performing the assessment, Mr. Hays testified that, in his expert opinion, the Defendant met the criteria for a sexually violent predator. (ST 16). The Defendant was thereafter sentenced to an aggregate sentence of thirty three (33) years and two (2) months to one hundred twelve (112) years incarceration.

## II.  ELIGIBILITY FOR RELIEF

The requirements for eligibility for relief under the Post-Conviction Relief Act are set forth both in the Act itself (42 Pa.C.S. §9541, *et. seq.*) and in the Rules of Criminal Procedure (Pa.R.Crim.P. Rules 901 and 902). Generally speaking,

> PCRA petitioners, to be eligible for relief, must, inter alia, plead and prove their assertions by a preponderance of the evidence. Section 9543(a). Inherent in this pleading and proof requirement is that the petitioner must not only state what his issues are, but also he must demonstrate in his pleadings and briefs how the issues will be proved. Moreover, allegations of constitutional violation or of ineffectiveness of counsel must be discussed "in the circumstances of the case." Section 9543(a)(2)(i-ii). Additionally, the petitioner must establish by a preponderance of evidence that because of the alleged constitutional violation or ineffectiveness, "no reliable adjudication of guilt or innocence could have taken place." Section 9543(a)(2)(i-ii). Finally, petitioner must plead and prove that the issue has not been waived or finally litigated, §9543(a)(3), and if the issue has not been litigated earlier, the petitioner must plead and prove that the failure to litigate "could not have been the result of any rational, strategic or tactical decision by counsel." Section 9543(a)(4).

*Commonwealth v. Rivers*, 567 Pa. 239, 245-246, 786 A.2d 923, 927 (Pa. 2001).

Additionally, because Nuttall has raised an allegation of the ineffective assistance of counsel, he must plead and prove, by a preponderance of the evidence:

> (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her course of conduct; and (3) that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Jones*, 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996). Counsel is presumed to be effective and Appellant has the burden of proving otherwise. *Commonwealth v. Marshall*, 534 Pa. 488, 633 A.2d 1100 (1993). Additionally, counsel cannot be considered ineffective for failing to raise a

384
8

claim that is without merit. *Commonwealth v. Peterkin*, 538 Pa. 455, 649 A.2d 121 (1994) . . .

*Id., citing Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

In his PCRA Petition, Nutall alleges that he is eligible for relief under the Post Conviction Relief Act due to ineffective assistance of trial counsel, which in the circumstances of this particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.[4]

## III.    ISSUES PRESENTED:

I.    **WHETHER THE DEFENDANT IS ENTITLED TO PCRA RELIEF BASED UPON ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF COUNSEL?**

The PCRA petition filed by Nuttall raised six allegations of ineffective assistance of counsel. However, the Defendant only addressed four allegations of error in his Memorandum of Law in Support of his Post Conviction Petition.

A petitioner in a PCRA who alleges the ineffective assistance of counsel as a claim for relief faces a difficult burden.

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Colavita*, 606 Pa. at 21, 993 A.2d at 886 (citing *Strickland, supra* ). In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. *See Pierce, supra*. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali*, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails."

---

[4] Defendant's PCRA petition, p. 4)

394

9

*Commonwealth v. Simpson*, ——. Pa. ——, 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *See Ali, supra.* Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Colavita*, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). " '[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.' " *Ali*, 608 Pa. at 86–87, 10 A.3d at 291 (quoting *Commonwealth v. Collins*, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052)). With this legal framework in mind, we now examine the issues presented by the Commonwealth for our review.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 -312 (Pa. 2014). Further, the law presumes that trial counsel was effective. *Commonwealth v. Rios*, 920 A.2d 790, 805 (Pa. 2007).

a. **Whether trial counsel was ineffective for failing to file a motion to suppress oral statements made by the Petitioner while he was in custody at the Belle Vernon barracks of the Pennsylvania State Police.**

Nuttall first alleges in the Petition for Post Conviction Relief that his trial counsel was ineffective for failing to file a motion to suppress oral statements that were made by the Defendant on July 31, 2005 while he was in custody at the Belle Vernon barracks of the Pennsylvania State Police.[5] However, this issue was not addressed in the Defendant's Memorandum of Law in Support of his Post Conviction Petition and is, therefore, deemed abandoned.

Simply stated, Defendant cannot prove trial counsel's ineffectiveness by merely identifying arguably meritorious claims. He must present evidence proving that trial counsel had

---

[5] Defendant's PCRA Petition, p. 4, ¶ 12(A)(1).

404
10

no reasonable strategic basis for failing to file a motion to suppress. Having failed to explore trial counsel's reasoning, Defendant has not overcome the presumption that trial counsel provided effective representation.

However, even if Nuttall had not abandoned this issue, it is meritless. Trial counsel testified at the PCRA hearing that his recollection was that the Defendant "was Mirandized before he gave any statements." (HT 5).[6] He indicated that "he could not find any basis to file a motion to suppress." (HT 7). Further, the trial record reflects that the Defendant was Mirandized and signed two written Miranda waiver forms, one for the Pennsylvania State Police and one for the Westmoreland County Detective Bureau, which were admitted into evidence. (TT 269-273). Thus, even if not abandoned, the Petitioner's claim is meritless.

> b.      Whether trial counsel was ineffective "in failing to request a cautionary instruction at the time of the testimony that Petitioner's threat to the victim involved her mother's previous suicide attempt when she discovered Petitioner with another woman in a very compromising situation."[7]

Nuttall next alleges that trial counsel was ineffective in failing to request a cautionary instruction at the time of the testimony that Defendant's threat to the victim involved her mother's previous suicide attempt when she discovered her husband, the Defendant, with another woman in a "very compromising situation."[8] Specifically, the Commonwealth presented testimony to explain the threats that the Defendant had made to the victim to keep her from telling anyone and to explain the victim's delay in reporting.

---

[6] Numerals in parenthesis preceded by the letters "HT" refer to specific pages of the transcript of the PCRA hearing in this matter, held on April 14, 2015, before this court, which has been made a part of the record herein.
[7] All statements of issue hereafter have been taken verbatim from Defendant's PCRA Petition; Defendant's PCRA Petition p. 4, ¶ 12(A)(2).
[8] Defendant's PCRA Petition, p. 4, ¶ 12(A)(2).

The victim, M.M., testified that the sexual assaults began when she was approximately 11 years old and continued until she was approximately 17 years old. (TT 84,114). The victim testified that, during that time, the Defendant told her that "nobody would believe me" if she told anyone about the sexual assaults. (TT 100). She stated that she felt "pretty much hopeless" and "embarrassed" and that she "really didn't think that nobody would believe me." (TT 100). She also indicated that the Defendant told her this on more than one occasion. (TT 100). However, as the victim became older, she testified that the Defendant told her that if she told her mother, Shelly Nuttall, "it would hurt her really bad." (TT 101). The Defendant additionally told her that her mother had tried to commit suicide before and if she learned of the abuse, "she would try again." (TT 101). The Defendant further explained that the victim's mother, the Defendant's wife, had attempted suicide after she caught the Defendant with the victim's mother's best friend. (TT 102). The victim testified that that the Defendant had told her that the victim's mother "had walked in on him and her – at the time, best friend, and that she was giving him oral sex."(TT 102). The victim testified, "I was afraid that if I did tell somebody that she would kill herself." (TT 101).

Trial counsel raised a pre-trial objection to this evidence. (TT 18). The Court admitted the testimony, over objection, but indicated that a cautionary instruction would be given (TT 16-17). However, no such instruction was given. PCRA counsel contends the trial counsel's failure to remind the court of her position to instruct the jury on the limited use of the testimony is ineffectiveness.[9] The Commonwealth maintains that the evidence was relevant at trial to refute defense's claim that the victim was not believable due to her delay in reporting and that the evidence explains her failure to make a prompt complaint.[10] Further, the Commonwealth alleges

[9] Defendant's Memorandum of Law In Support of Post-Conviction Petition, p. 1, ¶ 2.
[10] Commonwealth's Response to Defense's PCRA Petition, p. 6, ¶ 3).

42a

12

that any prejudicial effect that the testimony may have had was insignificant "compared to the overwhelming evidence of defendant's guilt" and any error in failing to give a cautionary instruction was harmless, as the testimony specifically addressed why the victim delayed in reporting the abuse and did not go to the crime itself.

The issue of whether this Court erred in permitting the Commonwealth to introduce evidence that Nuttall had engaged in an extramarital affair was raised on direct appeal by the Defendant. The Superior Court affirmed the decision of this Court, adopting the Opinion and Order of Court, dated July 15, 2011, "as its own."[11] This Court ruled that the evidence of M.M.'s mother's suicide attempt and of Nuttall's extramarital affair were relevant to prove that Nuttall had in fact told M.M. that if she disclosed what he had been doing to her, it would hurt her mother. (Trial Court Opinion, dated July 15, 2011, p. 10) After noting that Defense counsel suggested that such evidence was a "prior bad act," this court opined:

> This court does not believe that this evidence constituted a prior
> bad act; however, the analysis is not dissimilar. Shelly Nuttall's
> confirmation that Nuttall had admitted to her that he had an
> affair and also that she had attempted suicide was particularly
> relevant in proving why M.M. delayed reporting the incidents
> of abuse, and is strongly corroborative of her testimony
> on that issue. The probative value of the evidence outweighed
> any prejudicial effect that may have accompanied the
> introduction of the evidence, and was properly admitted.[12]

This court has correctly noted that the evidence does not constitute a "prior bad act." Rather, it constitutes evidence of a threat involving conduct that could be possibly considered immoral, but certainly not illegal.

Assuming arguendo that the evidence could be characterized as a "prior bad act," evidence of prior bad acts is inadmissible to prove character or to show conduct in conformity

---

[11] Commonwealth v. A.W.N., 813 WDA 2011 (Memorandum Opinion).
[12] Trial Court Opinion, dated July 15, 2011, p. 10-11.

with that character. *Commonwealth v. Busanet*, 54 A.3d 35, 60 (Pa. 2012). However, evidence of prior bad acts is admissible where there is a legitimate reason for the evidence, such as to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be admissible to impeach the credibility of a testifying defendant; *to show that the defendant has used the prior bad acts to threaten the victim;* and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case, and were part of its natural development. *Commonwealth v. Page*, 965 A.2d 1212, 1219 (Pa. Super 2009), citing *Commonwealth v. Reid*, 571 Pa. 1, 811 A.2d 530,549 (Pa. 2002) (internal citations omitted)(emphasis added). While evidence of prior bad acts may be relevant and admissible, there is "the potential for misunderstanding on the part of the jury when this type of evidence is admitted." *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176, 179 (Pa. 1985). This evidence must be accompanied by a cautionary instruction which explains to the jury the limited purpose for which the evidence has been admitted. *Id.* However, in the context of an ineffectiveness claim, counsel's failure to request a cautionary instruction regarding evidence of other crimes or prior bad acts does not constitute *per se* ineffectiveness; "[r]ather, in order to obtain relief under such a claim, a defendant must still satisfy each of the three prongs of the test for ineffective assistance of counsel." *Commonwealth v. Weiss*, 622 Pa. 663, 716, 81 A.3d 767, 798 (Pa. 2013), citing *Commonwealth v. Buehl*, 540 Pa. 493, 658 A.2d 771, 778 (Pa. 1995)(plurality opinion). Further, as the Commonwealth points out in its memorandum, a failure to give a cautionary instruction on evidence of prior bad acts may be harmless depending on the evidence. *Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277 (Pa. 2011)

In *Hutchinson*, the Pennsylvania Supreme Court considered the issue of whether counsel's failure to request a cautionary instruction after the admission of "bad acts" evidence

44 a

constituted ineffectiveness. *Id.* at 305. The Court examined *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, (Pa. 1989), cited by the Petitioner in support of his position. In *Billa*, the Supreme Court granted the appellant a new trial after concluding that his counsel was ineffective for failing to request a limiting instruction. Specifically, the Court stated:

> The appellant had been found guilty of the first-degree murder of a sixteen-year-old girl with whom he had been attempting to establish a relationship. *Billa, supra* at 837. The trial court had admitted, over defense counsel's vigorous objection, testimony concerning a violent sexual assault on a different victim that had been committed by the appellant approximately two months before the murder. *Id.* at 838–39. The two attacks bore numerous similarities, including the fact that both victims were young Hispanic females. *Id.* at 841. Although we noted that the testimony of the sexual assault victim was vivid, graphic, highly prejudicial, and potentially emotional, we held that it was properly admitted because of its relevance to proving the appellant's motive and intent and the absence of accident. *Id.* Nonetheless, we also held that trial counsel was ineffective for failing to request an appropriate limiting instruction. *Id.* at 842. We recognized that the highly inflammatory testimony of the prior sexual assault victim "created the substantial danger that the jury could be swayed in its deliberations ... by this evidence showing [the] appellant's criminal character and his propensity to sexually assault young Hispanic females." *Id.* at 841. ... We concluded that the *Billa* appellant's counsel was constitutionally ineffective for failing to request an appropriate limiting instruction as to the permissible use of evidence of the prior sexual assault, and we therefore awarded the appellant a new trial. *Id.* at 843.

*Hutchinson*, at 305-306.

However, the Court distinguished *Hutchinson* from *Billa*, stating "In the instant case, the relevant circumstances have little, if anything, in common with those of *Billa*, and we decline to hold that trial counsel was ineffective for failing to request a limiting instruction. The bad acts evidence of which Appellant complains was not inflammatory, not graphic, and not extensive." *Id.* at 306. The court further explained, "More importantly, Appellant has not

454

15

established prejudice, *i.e.*, he has failed to demonstrate that there is a reasonable probability that the outcome of his trial would have been different but for the lack of a limiting instruction. We have previously noted the 'overwhelming evidence' of Appellant's guilt." *Id.* The Court stated, "In light of this overwhelming evidence, which includes eyewitness testimony of the victim's two children, both of whom knew Appellant, Appellant has failed to suggest how he could have been prejudiced by counsel's failure to request a limiting instruction such that there is a reasonable probability that the outcome of his trial would have been different." *Id.*

Likewise, in the instant case, the circumstances have little, if anything, in common with *Billa*. The evidence at issue does not constitute prior "bad acts" and involves, at best, immoral conduct. It is not "graphic, inflammatory, or extensive." Significantly, the evidence was relevant at trial to in proving why M.M. delayed reporting the incidents of abuse, and did not go to the crime itself. Further, the Defendant has not met his burden in showing prejudice, in that he has failed to demonstrate that there is a reasonable probability that the outcome of his trial would have been different but for the lack of a limiting instruction, given the overwhelming evidence of the defendant's guilt. Accordingly, there is no merit to Defendant's claim of trial counsel's ineffectiveness.

> c. **Whether trial counsel was ineffective "for failing to introduce, for the jury's consideration, the medical records from Petitioner's treatment for an aneurysm which occurred during this time period when the victim alleged that the Petitioner sexually assaulted her."** [13]

Nuttall also alleges in the Petition for Post Conviction Relief that his trial counsel was ineffective for failing to introduce, "for the jury's consideration the medical records from Defendant's treatment for an aneurysm which occurred during this time period when the victim

---

[13] Defendant's PCRA Petition, p. 5, ¶ 12(A)(3).

alleged that the Petitioner sexually assaulted her."[14] However, this issue was also not addressed in the Defendant's Memorandum of Law in Support of his Post Conviction Petition and is, therefore, deemed abandoned.

Again, Defendant cannot prove trial counsel's ineffectiveness by merely identifying arguably meritorious claims. He must present evidence proving that trial counsel had no reasonable strategic basis for failing to introduce the medical records from Defendant's treatment for an aneurysm. Having failed to explore trial counsel's reasoning, Defendant has not overcome the presumption that trial counsel provided effective representation.

Even had Nuttall had not abandoned this issue, it is meritless. Trial counsel testified at length at the PCRA hearing that evidence regarding the Defendant's aneurysm was presented on the Defendant's behalf. Mr. Sweeney also explained his decision to present the testimony of the Defendant's physical therapist. Trial counsel testified that, while he did obtain the medical records of the Defendant, he chose to present the testimony of the Defendant's treating physical therapist, rather than that of the neurologist. PCRA counsel asked Mr. Sweeney:

Q:    And did you make a determination that it would be a trial strategy not to call the neurologist?

A:    It was the neurologist had not seen Mr. Nuttall with the intensity that the physical therapist had. Neurologist records were typical for that kind of contact. He saw him every several months during his recovery, and what the neurologist was going to share I felt was going to be able to better presented (sic) through the physical therapist about the physical limitations. I think I also called family members to talk about his physical limitations at the time this supposedly happened.

Q:    That's correct. Yes, you did. That's in the transcript. So you made a tactical decision not to present the neurologist for the records that were confirmed his actual condition, is that right?

---

[14] Defendant's PCRA Petition, p. 5, ¶ 12(A)(3).

17

A:     There wasn't any real dispute about his actual condition from the Commonwealth. He testified, his family testified about it, the physical therapist. The advantage I saw with the physical therapist was he had empirical data that Mr. Nuttall had taken a test, was evaluated, he showed progress. The physical therapist, I felt, his testimony was most compelling because the description of the assaults were descriptions of a very violent intense restraint in holding down, and this was not consistent with Mr. Nuttall's physical condition at or about the time this supposedly happened. The neurologist would say I have this number to start and this is where he was at this point - - not the neurologist, the physical therapist. The neurologist's records were voluminous and I really didn't even contemplate putting those in because from my experience the jury is not going to go through those records and look at stuff, they are going to listen to what happens on the stand.

(HT 10-12).

With respect to whether counsel's acts or omissions were reasonable, defense counsel is accorded broad discretion to determine tactics and strategy. *See Commonwealth v. Washington*, 927 A.2d 698, 712 (Pa. 2007). The test is not whether other alternatives are more reasonable, but whether counsel's decision had any reasonable basis to advance the interests of the defendant. *Id.* To satisfy this prong of the test, the defendant must prove that counsel's strategic decision was so unreasonable that "no competent lawyer would have chosen it." *Commonwealth v. Rega*, 933 A.2d 997, 1018-19 (Pa. 2007). Further, counsel will not be deemed ineffective for failing to pursue a meritless claim. *Id.* at 1019.

In the instant case, trial counsel had a reasonable basis for presenting the testimony of the physical therapist, rather than the medical records or the testimony of the neurologist. Therefore, assuming arguendo the claim was not abandoned, there is no merit to this claim.

> d.     Whether trial counsel was ineffective "in failing to call Todd Musgrove to testify when the Commonwealth did not call him."[15]

Nuttall next claims that trial counsel was ineffective for "failing to call Todd Musgrove as a witness."[16] Defendant alleges that Mr. Musgrove was the victim's boyfriend, who "actually

---

[15] Defendant's PCRA Petition, p. 5, ¶ 12(A)(4).

48 G

18

initially reported to the victim's grandparents what the victim alleged that the Petitioner had done to her" and "also provided information during his interview with the investigator that the victim was making the story up."[17]

> When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that:
> (1) the witness existed;
> (2) the witness was available to testify for the defense;
> (3) counsel knew of, or should have known of, the existence of the witness;
> (4) the witness was willing to testify for the defense; and
> (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 599 (2007). To demonstrate *Strickland* prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 597 Pa. 402, 951 A.2d 1110, 1134 (2008); *see also Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 546 (2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense.").

*Commonwealth v. Johnson*, 600 Pa. 329, 351, 966 A.2d 523, 536 (2009).

The potential witness, Todd Musgrove, who was 27 or 28 at the time of the relationship, was the ex-boyfriend of the victim, MM. (TT 145). The victim disclosed the sexual assaults to him. (TT 117). Mr. Musgrove told the victim's grandparents about the assaults, without the victim present, in February or March, 2006. (TT 176). The victim was confronted by her grandparents and confirmed that she had been sexually assaulted by Nuttall. (TT 119).

Trial counsel hired a private investigator who interviewed Mr. Musgrove and provided a report to counsel. (HT 13).[18] At the time of trial, the victim and Todd Musgrove were no longer in a relationship. (HT 13). Trial counsel testified that he spoke to the investigator about her impressions of Mr. Musgrove and that he also spoke to Mr. Musgrove. (HT 14). Attorney

---

[16] Defendant's PCRA Petition, p. 5, ¶ 12(A)(4).
[17] Defendant's Memorandum of Law in Support of Post-Conviction Petition, p. 3, ¶ 2
[18] *See* Report of Investigation, attached to Defendant's PCRA petition.

Sweeney testified that "I didn't find Mr. Musgrove to be a credible witness based on my investigation." (HT 14). He further indicated that "Mr. Musgrove appeared to have an agenda" and that "he was very upset that it [the relationship with MM] got broken off and I just felt what was going to come out if Mr. Musgrove testified, that it wasn't going to help and it could possibly hurt Mr. Nuttall." (HT 14).

Trial counsel cannot be presumed to be ineffective for failing to call Mr. Musgrove. Because counsel believed that Mr. Musgrove's testimony could undermine the Defendant's defense, he had a reasonable basis for his strategy. Further, Defendant has not shown or demonstrated any prejudice, in that he has not "shown how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Sneed, 45 A.3d 1096, 1109 (Pa. 2012).* To the contrary, the Defendant's Memorandum of Law acknowledges that Mr. Musgrove provided information that he was "very upset when the victim broke up with him soon after the allegations were disclosed to the grandparents and he felt that the victim was 'using' him."[19] This buttresses trial counsel's assessment that Todd Musgrove had an obvious agenda that would be harmful to his credibility and could make him an undesirable defense witness. Accordingly, there is no merit to this claim.

e.    **Whether trial counsel was ineffective in "failing to cross-examine the victim completely about her testimony that Petitioner told the victim that she could not tell her mother about their relationship because, when her mother saw Petitioner with another woman, she attempted suicide."[20]**

Nuttall next alleges that trial counsel was ineffective in failing to cross-examine the victim "completely" about her testimony that Defendant told the victim that she could not tell her mother about their relationship because, when her mother saw Defendant with another woman, she attempted suicide.

[19] Defendant's Memorandum of Law in Support of Post-Conviction Petition, p. 3, ¶ 2.
[20] Defendant's PCRA Petition, p. 5, ¶ 12(A)(5).

The victim testified at trial that the Defendant told the victim that "nobody would believe me" if she revealed the sexual assaults. (TT 100). As the victim got a little older, the Defendant told her that if she disclosed the sexual abuse it would hurt her mother "real bad." (TT 101). Ultimately, the Defendant told the victim that her mother had attempted suicide, as a result of walking in on the Defendant receiving oral sex from the mother's best friend. (TT 102). The victim testified that she did not tell her mother about the abuse, because "I didn't want my mom to kill herself." (TT 102). The victim also testified that she did not speak with her mother about this attempted suicide until later. (TT 102-03).

Trial counsel cross examined the victim extensively on the issue of her mother's attempted suicide. (TT 147-155). Trial counsel cross examined the victim on why the attempted suicide was not contained in the written statement provided to police (TT 150) and, on cross examination, the victim admitted she forgot to put it in the statement. (TT 150). Trial counsel also cross examined the victim on why she did not testify to it at the preliminary hearing (TT 155).

It appears from the record that counsel did conduct extensive cross examination on the issue of the mother's attempted suicide, both of the victim (TT 147-155) and the victim's mother (TT 217-20). The Defendant cites no authority in support of his position, nor does he demonstrate how the Defendant was prejudiced. The threat that disclosure of the sexual assaults on the victim would possibly trigger a suicide in the victim's mother is equally a threat, whether the original source of information of the mother's suicide attempt came from the Petitioner or from her mother herself. Accordingly, there is no merit to this claim.

> **f.** Whether trial counsel was ineffective in "failing to present character testimony on Petitioner's behalf, specifically, Charles M. Clark, 1406 Greensburg Pike, West Newton, PA 15089 and Jean Clair, from Greensburg, PA, who worked at American Reel, Petitioner's place of employment and

who actually hired the victim and had conversations with her about her relationship with the Petitioner."[21]

Finally, Defendant alleges that "trial counsel presented no character testimony on Petitioner's behalf; testimony about Petitioner's reputation for truthfulness and for being a law-abiding and peaceful citizen."[22]

Under Pa.R.E. Rule 404(a)(2)(A), a criminal defendant may introduce evidence of a "pertinent" character trait. "Pertinent" means relevant to the crimes charged. *Commonwealth v. Minich*, 4 A.3d 1063, 1071 (Pa.Super.2010). In rebuttal, the Commonwealth may offer evidence of the defendant's bad character. Pa. R.E. 404(a)(2)(A). Pennsylvania law generally limits proof of character evidence to a person's reputation, and opinion evidence cannot be used to prove character. Pa. R.E. 405(a). *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775 (Pa.Super. 2015).

Trial counsel testified at the PCRA hearing that he discussed calling character witnesses on Mr. Nuttall's behalf with the Defendant. (HT 18). Mr. Sweeney indicated that he sent a letter to a potential character witness, Mr. Clark. (HT 18). Mr. Sweeney testified that he did consider presenting character witnesses in this case, but that he made a decision not to call them. (HT 19). He indicated that there must have been a compelling reason and "he didn't want to have more come out that already had come out in a difficult trial." (HT 26). He testified that he was an experienced trial attorney, having practiced criminal law for approximately thirty years, who has tried many cases, including "homicides, rapes, every type of trial." (HT 25). Mr. Sweeney testified that he recalled that there were "certain character traits opening the door" to some of the things that he was able to keep out during the trial. (HT 21), which played a part in his decision whether or not to call character witnesses. (HT 21).

---

[21] Defendant's PCRA Petition, p. 5, ¶ 12(A)(6).
[22] Defendant's Memorandum of Law, p. 4, ¶ 2.

The Defendant alleges that character evidence alone may be sufficient to raise a reasonable doubt and justify an acquittal of the charges. *Commonwealth v. Morgan*, 559 Pa. 248, 739 A.2d 1033, 1037 (Pa. 1999). Further, the Petitioner argues that "where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance and character evidence is critical to the jury's determination of credibility."[23] However, the Defendant did not present any testimony at the PCRA hearing from the potential character witnesses as to what their testimony would have been. This Court specifically inquired of PCRA counsel, "You don't have any character witnesses here to tell me what they would have said?" PCRA Counsel responded, "No, Your Honor."(HT 27), and indicated that the witnesses were unable to be located. (HT 27).

Once again, the Defendant alleging ineffective assistance of counsel must plead and prove, by a preponderance of the evidence: (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her course of conduct; and (3) that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Rivers*, 567 Pa. 239, 245-246, 786 A.2d 923, 927 (Pa. 2001), *citing Commonwealth v. Jones*, 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996)

No witnesses testified to the aspects of Defendant's character that he claims trial counsel should have elicited at trial. Among other things, a PCRA defendant must show the proposed testimony would have been beneficial, *i.e.*, the absence of other good-character evidence "was so prejudicial as to have denied the [petitioner] a fair trial." *See Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 536 (2009). Without evidence at the PCRA hearing of what Defendant's two witnesses would have said about his reputation for good character, he cannot prove

---

[23] Defendant's Memorandum of Law, p. 5, ¶ 2.

53a

23

prejudice. The Court would be forced to speculate about that testimony and how its absence prejudiced the Defendant. This the Court cannot do.

The Defendant had every opportunity to fulfill his burden at the PCRA hearing, but failed to adduce any evidence whatsoever for this court to consider on the issue. The Defendant has failed entirely on his burden on this issue and has not shown what the witness would say or how the absence of the witnesses' testimony caused him prejudice. Thus, it appears that Nuttall is not entitled to post-conviction relief on this basis.

Upon consideration of the Defendant's PCRA petition and the hearing thereon, the Court finds no merit in any of the Defendant's allegations.

NOW THEREFORE, the following Order shall enter:

54 a

24

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     )
                                         )
            VS.                        )     No.    3461 C 2006
                                           )
ANTHONY WAYNE NUTTALL,         )
                                           )
              Defendant.        )

## ORDER OF COURT

AND NOW, this _/6_ day of September, 2015, based upon the foregoing Opinion, it is hereby **ORDERED** as follows:

1.     For the reasons set forth in the foregoing Opinion, the Defendant's Petition for post-conviction relief filed pursuant to the Post Conviction Relief Act, (42 Pa.C.S. §9541, *et. seq.*) is hereby **DENIED.**

2.     **THE DEFENDANT IS NOTIFIED THAT ANY APPEAL TO THE SUPERIOR COURT OF PENNSYLVANIA FROM THIS COURT'S DISMISSAL OF HIS *PRO-SE* PCRA PETITION MUST BE FILED WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS ORDER OF COURT.**

3.     The Defendant is free to proceed on appeal *pro-se* or with private counsel of his choice. Should he desire to pursue his appeal *pro-se*, he should also file the required Motion to Proceed *in forma pauperis* with this court.

25

4a

**BY THE COURT:**

Rita Donovan Hathaway, Judge

**ATTEST:**

_____

Clerk of Courts

c.c.    File
Karen Patterson, Esq., Assistant District Attorney
John Sweeney, Esq., Former Counsel for the Defendant
Sally A. Frick, Esq., PCRA Counsel for the Defendant
Pam Neiderhiser, Esq, Office of the Court Administrator
Anthony Nuttall (HR 9672) SCI – Somerset, 1590 Walters Mill Road, Somerset, PA 15510

26

5a